In re REBEL RENTS, INC., a California corporation, Perris Valley Rentals, Inc., a California corporation, Debtors.

Vincent Graves, Plaintiff,

v.

Rebel Rents, Inc., and Does 1 through 50, inclusive, Defendants.

Bankruptcy Nos. RS02–25442 PC, RS02–25452 PC.
Adversary No. RS04–01513 PC.

United States Bankruptcy Court,
C.D. California,
Riverside Division.

July 6, 2005.

John T. Blanchard, Esq., Law Offices of John T. Blanchard, P.C., Michael K. Collins, Esq., Hill, Farrer & Burrill, LLP, Los Angeles, CA, for Plaintiff, Vincent Graves.

Paul J. Couchot, Esq., William J. Wall, Esq., Newport Beach, CA, for Defendant, Rebel Rents, Inc.

## MEMORANDUM DECISION

PETER H. CARROLL, Bankruptcy Judge.

Plaintiff, Vincent Graves ("Graves"), having missed the deadline to appeal the summary judgment entered on April 28, 2005, dismissing this adversary proceeding, seeks an extension of time to file a notice of appeal pursuant to Fed. R. Bankr.P. 8002(c)(2). Defendant, Rebel Rents, Inc. ("Rebel") opposes the motion. At the hearing, John T. Blanchard appeared on behalf of Graves, and William J. Wall appeared for Rebel. The court, having considered the pleadings, evidentiary record, and arguments of counsel, makes the following findings of fact and conclusions of law [1] pursuant to Fed.R.Civ.P. 52, as incorporated into Fed. R. Bankr.P. 7052.

## I. STATEMENT OF FACTS

On September 23, 2002, Rebel filed its voluntary petition for reorganization under chapter 11 of the Bankruptcy Code.[2] At that time, Rebel was the largest independent equipment rental company in Southern California, offering a wide inventory of equipment for sale or lease to construction companies, industrial concerns, commercial businesses, and residential homeowners in San Bernardino, Riverside and San Diego Counties.

On May 12, 2003, General Electric Capital Corporation ("GECC"), Rebel's largest secured creditor, filed a disclosure statement and proposed plan of reorganization. GECC had financed Rebel's operations both before and after the commencement of the case, and its claims exceeding $23,369,000 were secured by substantially all of the assets of Rebel's estate.

On June 25, 2003, the court entered an order approving the First Amended Disclosure Statement Describing the First Amended Joint Chapter 11 Plan Proposed by GE Capital Corporation, and setting a hearing on confirmation of the First Amended Joint Plan of Reorganization for Rebel Rents, Inc. and Perris Valley Rentals, Inc. Submitted by General Electric Capital Corporation dated June 19, 2003 ("Plan") for August 5, 2003.[3] Article 4.1 of the Plan states:

"With the exception of those executory contracts and unexpired leases that have been previously assumed or rejected by order of the Bankruptcy Court pursuant to Bankruptcy Code section 365, as of the Effective Date, the Debtors shall reject, pursuant to Bankruptcy Code

1. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

2. Unless otherwise indicated, all Code, chapter, and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

3. According to the Proof of Service filed on June 27, 2003, Graves was served with the disclosure statement, plan, notice of the confirmation hearing and a ballot on June 26, 2003, at 23 Corte Latueza, Lake Elsinore, CA 92532. Graves did not file an objection either to the adequacy of the disclosure statement or to confirmation of the plan.

section 365, all other executory contracts and unexpired leases." [4]

The Plan further provided for cancellation of the old common stock of Rebel, and the issuance of new equity securities in Rebel, together with new senior secured notes to GECC, on the Effective Date of the Plan [5] in satisfaction of GECC's Class 2 and Class 3 claims against the estate.[6]

On July 31, 2003, Rebel filed a motion seeking authority to assume approximately 50 executory contracts and unexpired leases, including the following unexpired leases of non-residential real property with Graves that are the subject of this adversary proceeding:

1.  Lease of the real property at 42188 Winchester Road, Temecula, California dated October 6, 2000.

2.  Lease of the real property at 24461 Highway 74, Perris, California dated April 10, 2001.

3.  Lease of the real property at 202 East 1st Street and 121 South Cypress, Santa Ana, California dated November 13, 2002.

4.  Lease of the real property located in the unincorporated area of Riverside County known as one (1) acre parcel 14 of parcel map 21383 as shown by map on file in Book 167, pages 18–25, inclusive, of parcel maps, Official Records of Riverside County, California, dated June 1, 2001.

Rebel's assumption motion included the following notice and opportunity to request a hearing:

"IF YOU DO NOT OPPOSE THE MOTION DESCRIBED ABOVE, YOU NEED TAKE NO FURTHER ACTION. HOWEVER, IF YOU OBJECT TO THE MOTION, PURSUANT TO LOCAL BANKRUPTCY RULE 9013–1(g), OBJECTIONS MUST BE FILED WITH THE COURT WITHIN FIFTEEN (15) DAYS OF THE DATE OF SERVICE OF THIS NOTICE.... UPON RECEIPT OF A WRITTEN OBJECTION AND REQUEST FOR HEARING, THE DEBTORS' COUNSEL WILL OBTAIN A HEARING DATE AND GIVE APPROPRIATE NOTICE THEREOF. ANY FAILURE TO TIMELY FILE AND SERVE OBJECTIONS MAY RESULT IN ANY SUCH OBJECTIONS BEING WAIVED." [7]

On August 21, 2003, Rebel filed an amendment to its assumption motion identifying an unexpired lease with Graves of certain non-residential real property located at 450 N. State Street, Hemet, CA, which Rebel also intended to assume. Rebel's amended motion included the following notice and opportunity to request a hearing:

"IF YOU DO NOT OPPOSE THE AMENDMENT TO THE MOTION DESCRIBED ABOVE, YOU NEED TAKE NO FURTHER ACTION. HOWEVER, IF YOU OBJECT TO THE AMENDMENT, PURSUANT TO LOCAL BANKRUPTCY RULE 9013–1(g), OBJECTIONS MUST BE FILED WITH THE COURT WITHIN FIF-

---

4.  Plan, ¶ 4.1, at p. 19.

5.  "Effective Date" is defined in the Plan as "[t]he first Business Day after the Confirmation Date on which the Confirmation Order becomes a Final Order and all conditions to the Effective Date have been satisfied or, if waivable, waived." Plan ¶ 1.30, at p. 5.

6.  Plan, ¶ 5.2–5.3, at p. 21.

7.  Debtors' Motion to Reject and Assume Executory Agreements and Unexpired Leases, p. 3, l.5–20. According to the Certificate of Service attached to the motion, Graves was served with Rebel's motion and supporting documents on July 30, 2003, at 23 Corte Latueza, Lake Elsinore, CA 92532.

TEEN (15) DAYS OF THE DATE OF SERVICE OF THIS NOTICE.... UPON RECEIPT OF A WRITTEN OBJECTION AND REQUEST FOR HEARING, THE DEBTORS' COUNSEL WILL OBTAIN A HEARING DATE AND GIVE APPROPRIATE NOTICE THEREOF. ANY FAILURE TO TIMELY FILE AND SERVE OBJECTIONS MAY RESULT IN ANY SUCH OBJECTIONS BEING WAIVED." [8]

Graves, though properly and timely served, did not object to Rebel's assumption motion, as amended, nor request a hearing. It is undisputed that Rebel was current in rent payments and not otherwise in default under any of the subject leases at the time of assumption. However, each of the unexpired leases between Rebel and Graves contains the following provision:

"ASSIGNABILITY/SUBLETTING. Tenant may not assign or sublease any interest in the Premises, nor effect a change in the majority ownership of the Tenant (from the ownership existing at the inception of this lease), nor assign, mortgage, or pledge this Lease, without the prior written consent of Landlord, which shall not be unreasonably withheld."

On August 26, 2003, an order confirming the Plan was entered in the bankruptcy case. The confirmation order became final on September 5, 2003, and the Effective Date of the Plan was the first business day thereafter—Monday, September 8, 2003.

On November 5, 2003, the court entered an Order Granting Debtors' Motion to Reject and Assume Executory Agreements and Unexpired Leases ("Assumption Order"), authorizing assumption of the leases described in the motion and amendment, including Rebel's unexpired leases with Graves. Two days earlier, on November 3, 2003, Graves filed a complaint in Case No. 402642, styled *Vincent R. Graves v. Rebel Rents, Inc.*, in the Superior Court of Riverside County, seeking a judgment declaring that Graves was entitled to terminate each of his unexpired leases with Rebel reasoning that GECC's acquisition of stock in Rebel effected a "change in the majority ownership" of Rebel in violation of the non-assignment provision contained in each lease.

On March 1, 2004, Rebel filed a notice removing the state court action to this court pursuant to 28 U.S.C. § 1452 and Fed. R. Bankr.P. 9027(a). On September 2, 2004, Graves filed his First Amended Complaint for Declaratory Relief seeking, in addition to the claims alleged in state court, to set aside the Assumption Order on the grounds of alleged fraud. Graves characterized his amended complaint as an independent action for relief under Rule 60(b) of the Federal Rules of Civil Procedure.[9] Graves claimed that, despite having actually received Rebel's assumption motion, he was deliberately misled by Reb-

---

8. Amendment Affecting Only Certain Parties to Debtors' Motion to Reject and Assume Executory Agreements and Unexpired Leases, p. 5, l.26 to p. 6, l.14. According to the Certificate of Service attached to the amended motion, Graves was served with Rebel's amendment and supporting documents on August 21, 2003, at 23 Corte Latueza, Lake Elsinore, CA 92532.

9. Rule 60(b) states, in pertinent part:

(b) **Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** ... This rule does not limit the power of a court to entertain an *independent action* to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided by Title 28, U.S.C. § 1655, or to set aside a judgment for fraud upon the court....
Fed.R.Civ.P. 60(b) (emphasis added).

el into failing to respond to the motion, as amended. On March 11, 2005, the court entered a partial summary judgment in favor of Rebel, dismissing Graves' causes of action under Rule 60(b) to set aside the Assumption Order and finding that Graves had not presented evidence sufficient to raise a genuine issue of material fact that he was deliberately or fraudulently prevented by Rebel from presenting his claim or defense to Rebel's assumption motion. The court further found that Graves' failure to respond to Rebel's assumption motion was, in fact, due to negligence or lack of due diligence on his part, and further, that he had failed to set up a meritorious defense to assumption of the leases in response to Rebel's summary judgment motion. On April 28, 2005, the court entered a final summary judgment dismissing Graves' remaining claim against Rebel finding that the "change of ownership" restriction contained in the non-assignment provision of each lease between Graves and Rebel was invalid and unenforceable as a *de facto* anti-assignment clause under § 365(f).[10] The deadline to file a notice of appeal expired on May 9, 2005.[11]

On May 24, 2005, Graves filed a Motion for Order Extending Time for Filing Notice of Appeal seeking an extension of time to file a notice of appeal pursuant to Fed. R. Bankr.P. 8002(c)(2) and alleging that the failure of Graves' counsel to timely file a notice of appeal was the result of "excusable neglect." On June 2, 2005, Rebel filed a response in opposition to the motion arguing that the failure of Graves' counsel to comply with the 10–day deadline for filing a notice of appeal was not excusable under the facts of this case, and that an extension of time would prejudice Rebel in the final stages of its reorganization. After a hearing on June 16, 2005, the matter was taken under submission.

## II. DISCUSSION

The court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b). Graves' motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a).

### A. *Time for Filing Notice of Appeal*

Rule 8002(a) of the Federal Rules of Bankruptcy Procedure specifical-

---

**10.** Section 365(f)(1) states:

> Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection; ...

11 U.S.C. § 365(f)(1). Section 365(f)(3) further states:

> Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such

contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee.

11 U.S.C. § 363(f)(3); *see Crow Winthrop Dev. Ltd. P'ship. v. Jamboree LLC (In re Crow Winthrop Operating P'ship.)*, 241 F.3d 1121, 1123–24 (9th Cir.2001) (affirming the bankruptcy court's invalidation of a change in ownership provision in an executory contract as an unenforceable anti-assignment clause under § 365(f)).

**11.** The 10–day period actually expired on Sunday, May 8, 2005. Pursuant to Rule 9006(a), the last day to file the Notice of Appeal was extended to Monday, May 9, 2005. Fed. R. Bankr.P. 9006(a).

ly provides that a notice of appeal must be filed within 10 days from the date of entry of the judgment, order or decree from which the appeal is to be taken.[12] Rule 8002's provisions are jurisdictional and are strictly construed. *Delaney v. Alexander (In re Delaney)*, 29 F.3d 516, 518 (9th Cir.1994); *Slimick v. Silva (In re Slimick)*, 928 F.2d 304, 306 (9th Cir.1990); *Greene v. United States (In re Souza)*, 795 F.2d 855, 857 (9th Cir.1986). Therefore, the timely filing of a notice of appeal is mandatory. *Warrick v. Birdsell (In re Warrick)*, 278 B.R. 182, 185 (9th Cir. BAP 2002); *Key Bar Invs., Inc. v. Cahn (In re Cahn)*, 188 B.R. 627, 630 (9th Cir. BAP 1995).

If the 10–day deadline for filing a notice of appeal has expired, Rule 8002(c)(2) authorizes the bankruptcy court to extend the time for filing the notice of appeal if the party requesting an extension files a written motion not later than 20 days after the expiration of the time for filing a notice of appeal and establishes that the failure to timely file a notice of appeal was the result of excusable neglect.[13] Fed. R. Bankr.P. 8002(c)(2). Graves' motion for extension of time under Rule 8002(c)(2) is timely in that it was filed within 20 days after expiration of the May 9, 2005 deadline to file a notice of appeal in this adversary proceeding. The only remaining issue is whether Graves has met his burden of establishing "excusable neglect."

### B. *Excusable Neglect*

#### 1. *The Pioneer Factors*

The Supreme Court enunciated the standard for determining "excusable neglect" in *Pioneer Inv. Servs. Co. v. Brunswick*

---

12. Rule 8002(a) states:
**TEN–DAY PERIOD.** *The notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from.* If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 10 days of the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this rule, whichever period last expires. A notice of appeal filed after the announcement of a decision or order but before entry of the judgment, order, or decree shall be treated as filed after such entry and on the date thereof. If a notice of appeal is mistakenly filed with the district court or the bankruptcy appellate panel, the clerk of the district court or the clerk of the bankruptcy appellate panel shall note thereon the date on which it was received and transmit it to the clerk and it shall be deemed filed with the clerk on the date so noted.
Fed. R. Bankr.P. 8002(a) (emphasis added).

13. Rule 8002(c) states:
**Extension of Time for Appeal.**
(1) The bankruptcy judge may extend the time for filing the notice of appeal by any party, unless the judgment, order, or decree appealed from:

(A) grants relief from an automatic stay under § 362, § 922, § 1201, or § 1301;
(B) authorizes the sale or lease of property or the use of cash collateral under § 363;
(C) authorizes the obtaining of credit under § 364;
(D) authorizes the assumption or assignment of an executory contract or unexpired lease under § 365;
(E) approves a disclosure statement under § 1125; or
(F) confirms a plan under § 943, § 1129, § 1225, or § 1325 of the Code.
(2) A request to extend the time for filing a notice of appeal must be made by written motion filed before the time for filing a notice of appeal has expired, except that such a motion filed not later than 20 days after the expiration of the time for filing a notice of appeal may be granted upon a showing of excusable neglect. An extension of time for filing a notice of appeal may not exceed 20 days from the expiration of the time for filing a notice of appeal otherwise prescribed by this rule or 10 days from the date of entry of the order granting the motion, whichever is later.
Fed. R. Bankr.P. 8002(c).

*Assocs. Ltd. P'ship.,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In that case, Brunswick Associates, Ltd., Clinton Associates Limited Partnership, Ft. Oglethorpe Associates Limited Partnership, and West Knoxville Limited Partnership (collectively, "Brunswick"), creditors of Pioneer Investment Services Company ("Pioneer"), received a "Notice for Meeting of Creditors" in Pioneer's chapter 11 bankruptcy setting a creditors' meeting for May 5, 1989. The notice also contained a bar date of August 3, 1989, to file proofs of claim in the case. Brunswick retained Marc Richards ("Richards") to represent them in the bankruptcy, and Brunswick delivered to Richards the notice and a file containing all pertinent documents regarding their claims at least two months prior to the claims deadline. Brunswick also specifically asked Richards whether there was a deadline to file claims, to which Richards incorrectly responded that no such date had been set by the court.

On August 23, 1989, Brunswick filed their proofs of claim together with a motion under Rule 9006(b)(1) seeking a 20–day enlargement of the deadline to file claims on the ground of excusable neglect. Fed. R. Bankr.P. 9006(b)(1). In support of the motion, Richards claimed that he did not have access to his file and was unaware of the bar date because the deadline "came at a time when he was experiencing 'a major and significant disruption' in his professional life caused by his withdrawal from his former law firm on July 31, 1989." *Id.* at 384, 113 S.Ct. 1489. The bankruptcy court denied Brunswick's motion, finding that Richards had actual notice of the claims deadline and that the reason for the delay was not outside his control. *Id.* at

385–86, 113 S.Ct. 1489. The bankruptcy court further found that Richards was negligent in failing to file the proofs of claim prior to the bar date, stating that Richards' "actions indicated an indifference to the bar date and the orders of the court." *Brunswick Assocs. Ltd. P'ship v. Pioneer Inv. Servs. Co. (In re Pioneer Inv. Servs. Co.),* 943 F.2d 673, 677 (6th Cir.1991), *aff'd,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The district court affirmed. *Pioneer,* 507 U.S. at 386, 113 S.Ct. 1489.

The Court of Appeals for the Sixth Circuit reversed and remanded, holding that the record supported a finding of excusable neglect. In so holding, the Sixth Circuit found "it significant that the notice containing the bar date was incorporated in a document entitled 'Notice for Meeting of Creditors'," and that creditors had not been given a specific notice of the claims deadline on Form 16.[14] *Brunswick Assocs.,* 943 F.2d at 678. The Sixth Circuit stated:

> While we do not suggest that the court was obligated to notify creditors in precisely this form, the comparison between this Form 16 notice and the notice actually given in this case suggests the *dramatic ambiguity* of the latter. This ambiguity is exacerbated by the fact that the notice was simply and inconspicuously labeled "Bar date" without any reference to its significance as a deadline for the filing of proof of claims. Even persons experienced in bankruptcy might confuse such a label for other deadlines.

*Id.* (emphasis added).

The Supreme Court affirmed, holding that a finding of "excusable neglect" was "not limited strictly to omissions caused by

---

**14.** Form No.16, *Order for Meeting of Creditors and Related Orders, Combined With Notice Thereof and of Automatic Stay* is one of 35 official forms incorporated into the Bankruptcy Rules and Official Forms prescribed by order of the Supreme Court on April 25, 1983, pursuant to 28 U.S.C. § 2075. The Bankruptcy Rules and Official Forms became effective on August 1, 1983.

circumstances beyond the control of the movant," but was an "elastic concept" that included, in appropriate circumstances, errors resulting from negligence, including inadvertence, mistake or carelessness. *Pioneer*, 507 U.S. at 392, 113 S.Ct. 1489. The Court explained that the issue of whether admitted neglect can be excused is an equitable determination that incorporates all relevant factors, including (1) danger of prejudice to the non-movant; (2) length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *Id.* at 395, 113 S.Ct. 1489. However, the Supreme Court reiterated in *Pioneer* that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Id.* at 392, 113 S.Ct. 1489. The Court also clarified that clients must be "held accountable for the acts and omissions of their chosen counsel." *Id.* at 396, 113 S.Ct. 1489.

In reaching its conclusion in *Pioneer*, the Supreme Court gave "little weight" to Richards' excuse that he was "experiencing upheaval in his law practice at the time of the bar date." *Id.* at 398, 113 S.Ct. 1489. The Court, like the Sixth Circuit, focused on the ambiguous form of the bar date notice, coupled with the lack of any evidence of bad faith, prejudice to the debtor, or delay in the judicial administration of the case, stating that:

> "the 'peculiar and inconspicuous placement of the bar date in a notice regarding a creditors['] meeting,' without any indication of the significance of the bar date, left a 'dramatic ambiguity' in the notification."

*Id.* at 398, 113 S.Ct. 1489.

2. *Excusable Neglect in the Ninth Circuit*

Prior to *Pioneer*, the Ninth Circuit enforced a strict standard for determining excusable neglect. *Pratt v. McCarthy*, 850 F.2d 590, 592 (9th Cir.1988); *Alaska Limestone Corp. v. Hodel*, 799 F.2d 1409, 1411 (9th Cir.1986) (per curiam); *Oregon v. Champion Int'l Corp.*, 680 F.2d 1300, 1301 (9th Cir.1982). Enlargement of an appeal deadline based upon excusable neglect was permitted only upon a finding that extraordinary circumstances prevented a timely filing and that denying the appeal would result in an injustice. *Islamic Republic of Iran v. Boeing Co.*, 739 F.2d 464, 465 (9th Cir.1984); *see, e.g., Pratt*, 850 F.2d at 594 (holding that the district court abused its discretion in finding that a miscommunication between counsel regarding the filing of the notice of appeal constituted excusable neglect to enlarge an appeal deadline); *Alaska*, 799 F.2d at 1412 (affirming the denial of a 30–day extension to an appeal deadline, and holding that the clerk's failure to notify counsel of the entry of a final judgment was not a basis for finding excusable neglect); *Oregon*, 680 F.2d at 1301 (affirming the denial of a 1–day appeal deadline extension, and holding that counsel's error in addressing the notice of appeal to the state court rather than the federal court did not constitute excusable neglect). Inadvertence or mistake of counsel simply did not constitute excusable neglect. *See, e.g., Pratt*, 850 F.2d at 592 (stating that "[t]o find excusable neglect on these facts would be to run roughshod over our existing precedent and the purpose of Rule 4(a)"); *Alaska*, 799 F.2d at 1411 (opining that "[i]nadvertence or mistake of counsel, including that attributable to office staff, does not constitute excusable neglect under this standard"); *Oregon*, 680 F.2d at 1301 (stating that "[e]xtending the excusable neglect exception to clerical errors of counsel or counsel's staff would be inconsistent with the Advisory Committee's intent to limit the exception to ex-

traordinary cases and would thwart the Rule's purpose of promoting finality of judgments"). Nor did ignorance of court rules constitute excusable neglect, even if the litigant had appeared *pro se*. *Swimmer v. Internal Revenue Serv.*, 811 F.2d 1343, 1345 (9th Cir.1987).

Shortly after *Pioneer*, the Ninth Circuit in *Kyle v. Campbell Soup Co.*, 28 F.3d 928 (9th Cir.1994) held that the district court abused its discretion in finding excusable neglect based upon an attorney's mistaken belief that a 30–day deadline to file a post-trial motion for attorneys fees could be enlarged three days when service of the motion was effectuated by mail. *Id.* at 932. In so holding, the court stated:

> In this case, the district court found that counsel acted in good faith, that he had not demonstrated professional incompetence, and that Campbell Soup would not be prejudiced by allowing the time enlargement. Although these factors might support a finding of excusable neglect in a case involving different facts, we hold that they do not suffice where the only claimed neglect is an attorney's addition of three days for service by mail to a time period running from docketing of an order or judgment.

*Id.* at 931. The Ninth Circuit distinguished *Pioneer* and explained that its review of the district court's application of the *Pioneer* factors did not compel a contrary holding, stating:

> In *Pioneer*, the Court concluded that where the notice given a party about a court-ordered filing deadline contains a "'dramatic ambiguity' which could … confuse 'even persons experienced in bankruptcy,'" it would be error to conclude that, absent prejudice to the other party, failure to comply with the deadline was not excusable neglect.
> By contrast, counsel in this matter committed a mistake in interpreting and ap-

plying the Local Rules and Rule 6(e) of the Federal Rules of Civil Procedure, which were *not* ambiguous. This form of neglect was not excusable. Although the Court in *Pioneer* recognized that "excusable neglect" is a flexible, equitable concept, the Court also reminded us that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." In this case, counsel has not presented a persuasive justification for his misconception of nonambiguous rules. Accordingly, there is no basis for deviating from the general rule that a mistake of law does not constitute excusable neglect.

*Id.* at 931–32 (citations omitted).

Two years later, the Ninth Circuit in *Marx v. Loral Corp.*, 87 F.3d 1049 (9th Cir.1996) affirmed a district court's 1–day extension of the deadline to file a notice of appeal under Rule 4(a)(1) based upon a finding that difficulties encountered by plaintiffs' counsel in meeting with all members of the plaintiff class to discuss the appeal constituted excusable neglect. *Id.* at 1054. In so holding, the Ninth Circuit noted its long-standing rule that "[i]nadvertence or mistake of counsel does not constitute excusable neglect." *Id.* at 1053. However, the Ninth Circuit explained that the district court had weighed the relevant factors set forth in *Pioneer*, and had specifically found that:

> Plaintiffs have demonstrated that consultation difficulties hindered their prompt pursuit of appeal. There is no evidence of prejudice to the Defendants or to judicial administration, and certainly no indication of bad faith.

*Id.* at 1054. The Ninth Circuit concluded that "[t]he district court's analysis of the *Pioneer Inv.* factors in this case, *although considerably lenient to the plaintiffs*, was

not a clear error of judgment." *Id.* (emphasis added).

In *Briones v. Riviera Hotel & Casino*, 116 F.3d 379 (9th Cir.1997), the Ninth Circuit vacated a district court's denial of a *pro se* litigant's Rule 60(b) motion for relief from a judgment dismissing the case based on excusable neglect. *Id.* at 382. Briones, who was representing himself and was not proficient in English, had failed to notify his translator and typist of the deadline for responding to a dismissal motion. *Id.* at 380. Citing *Kyle,* the court stated that "although a late filing will ordinarily not be excused by negligence," *Pioneer* simply means "that possibility is by no means foreclosed." *Id.* at 382, 113 S.Ct. 1489. The court concluded that:

> While *pro se* litigants are not excused from following court rules, *it is not apparent that Briones' failure to respond to the motion to dismiss resulted only from a failure to read and attempt to follow court rules.* It may have been a communication problem within his group of assistants. In light of *Pioneer* and the holding in this case, it is appropriate for the district court to reconsider its decision to deny plaintiff's motion to set aside judgment.

*Id.* (emphasis added).

Four years after *Briones,* the Ninth Circuit in *Bateman v. United States Postal Serv.,* 231 F.3d 1220 (9th Cir.2000) reversed a district court's denial of a motion under Rule 60(b)(1) for relief from a summary judgment, finding that the district court had failed to conduct the equitable analysis mandated by *Pioneer* in concluding that the failure to respond to the summary judgment motion was not the result of excusable neglect. *Id.* at 1225. Specifically, Ninth Circuit held that the district court failed to apply the correct legal standard by not considering the prejudice to the defendant, length of delay and its potential impact on judicial proceedings, and whether the movant acted in good faith, stating:

> The court would have been within its discretion if it spelled out the equitable test and then concluded that Emeziem had failed to present any evidence relevant to the four factors. But it abused its discretion by omitting the correct legal standard altogether.

*Id.* at 1224.

Shortly thereafter, the Ninth Circuit decided *Speiser, Krause & Madole P.C. v. Ortiz,* 271 F.3d 884 (9th Cir.2001). In that case, Speiser, Krause & Madole, P.C. ("Speiser") had filed suit against Rudy A. Ortiz & Rudy A. Ortiz & Associates (collectively, "Ortiz") in state court seeking a judicial determination of the attorneys fees due each firm under a fee agreement between the parties. Ortiz removed the suit to federal court, and then failed to file an answer to the complaint within the time prescribed by Rule 81(c) of the Federal Rules of Civil Procedure. Speiser caused Ortiz's default to be entered, and notified Ortiz that it intended to seek a default judgment. In response, Ortiz filed a motion to set aside the default judgment and to enlarge the time under Rule 81(c) to file an answer in the case. The district court denied the motion, finding that Ortiz's admitted failure to read and carefully understand Rule 81(c)'s answer deadline did not constitute excusable neglect. *Id.* at 886. Citing its prior decision in *Kyle,* the Ninth Circuit affirmed, stating:

> While an attorney's egregious failure to read and follow clear and unambiguous rules might sometimes be excusable neglect, "mistakes construing the rules do not usually constitute 'excusable' neglect." As we have said in a similar situation, "counsel has not presented a persuasive justification for his misconstruction of nonambiguous rules. Ac-

cordingly, there is no basis for deviating from the general rule that a mistake of law does not constitute excusable neglect."

*Id.* at 886 (citations omitted). *See also Comm. for Idaho's High Desert, Inc. v. Yost,* 92 F.3d 814, 825 (9th Cir.1996) (following *Kyle* and holding that counsel's ignorance of the amended procedural rules for filing an application for attorneys fees was not excusable neglect).

Recently, the Ninth Circuit in *Pincay v. Andrews,* 389 F.3d 853 (9th Cir.2004) (en banc), *cert. denied,* —— U.S. ——, 125 S.Ct. 1726, 161 L.Ed.2d 602 (2005), held that an attorney's culpable conduct is not "per se" inexcusable, stating that "[a]ny rationale suggesting that misinterpretation of an unambiguous rule can never be excusable neglect" is inconsistent with *Pioneer. Id.* at 859. In *Pincay,* an attorney who had negligently delegated to a paralegal the responsibility for properly calculating and calendaring an appeal deadline, failed to timely file a notice of appeal and filed a motion seeking an extension of time. Counsel described the reason for the delay as "the failure of a 'carefully designed' calendaring system operated by experienced paralegals that heretofore had worked flawlessly." *Id.* The district court found excusable neglect and granted the motion. *Id.* at 855–56. The Ninth Circuit ultimately affirmed, holding that the district court did not abuse its discretion in finding excusable neglect and permitting the filing of the notice of appeal based upon its application of the *Pioneer* factors. *Id.* at 860. In so holding, the Ninth Circuit stated:

> In this case the mistake itself, the misreading of the Rule, was egregious, and the lawyer undoubtedly should have checked the Rule itself before relying on the paralegal's reading. Both the paralegal and the lawyer were negligent.

That, however, represents the beginning of our inquiry as to whether the negligence is excusable, not the end of it. The real question is whether there was enough in the context of this case to bring a determination of excusable neglect within the district court's discretion.

> We therefore turn to examining the *Pioneer* factors as they apply here. The parties seem to agree that three of the factors militate in favor of excusability, and they focus their arguments on the remaining factor: the reason for the delay . . . .

> *We recognize that a lawyer's failure to read an applicable rule is one of the least compelling excuses that can be offered;* yet the nature of the contextual analysis and the balancing of the factors adopted in *Pioneer* counsel against the creation of any rigid rule. Rather, the decision whether to grant or deny an extension of time to file a notice of appeal should be entrusted to the discretion of the district court because the district court is in a better position than we are to evaluate factors . . . . Had the district court declined to permit the filing of the notice, we would be hard pressed to find any rationale requiring us to reverse.

*Id.* at 858–59 (emphasis added).

### 3. *Pioneer's Application to Graves' Claim of Excusable Neglect*

■ *Pioneer* requires that the issue of excusable neglect be determined in the context of the particular case. *Pincay,* 389 F.3d at 859 (stating that the "question is whether there [is] enough in the context of [the] case to bring a determination of excusable neglect within the . . . court's discretion"). The burden of presenting facts demonstrating excusable neglect is on the movant. *Cahn,* 188 B.R. at 631; *In re Pac. Gas & Elec. Co.,* 311 B.R. 84, 89

(Bankr.N.D.Cal.2004). Because *Pioneer's* four factors are non-exclusive, the court is permitted to take "account of all relevant circumstances surrounding the party's omission" in making an equitable determination. *Pioneer,* 507 U.S. at 395, 113 S.Ct. 1489; *see Briones,* 116 F.3d at 382 n. 2 (noting that "we will ordinarily examine all of the circumstances involved rather than holding that any single circumstance in isolation compels a particular result regardless of other factors"). Such circumstances may include the procedural context in which the extension is sought. *Dix v. Johnson (In re Dix),* 95 B.R. 134, 137 (9th Cir. BAP 1988). *Pioneer* mandated a balancing test for divining excusable neglect, but *Pioneer* did not assign the weight to be accorded by the court to each of its non-exclusive factors in making an equitable determination. *See Pincay,* 389 F.3d at 860 (stating that "we leave the weighing of *Pioneer's* equitable factors to the discretion of the . . . court in every case"); *Lowry v. McDonnell Douglas Corp.,* 211 F.3d 457, 463 (8th Cir.2000) (stating that "[t]he four *Pioneer* factors do not carry equal weight"), *cert. denied,* 531 U.S. 929, 121 S.Ct. 309, 148 L.Ed.2d 248 (2000).

### a. *Danger of Prejudice to the Debtor*

According to Graves, "[t]here does not appear to be any prospect of prejudice" to Rebel because "nothing about [Rebel's] business will change during the pendency of the delayed appellate proceedings." [15] Graves promises to diligently pursue the appeal, "without any request for continuance or postponement," if the motion is granted. [16] Rebel disagrees, arguing that it "is in the final stages of its reorganization" and that "allowing Graves to proceed with the appeal will result in actual prejudice to the Debtor." [17] Specifically, Rebel maintains that it will be unable to close the case and will incur unremitting liability for the payment of quarterly fees and attorneys fees "if it must continue to consult with counsel to insure compliance with the Bankruptcy Code and UST regulations" during the pendency of the appeal. [18]

Rebel remains liable for the payment of quarterly fees to the United States Trustee until a final decree is entered and the case is closed, or the case is converted or dismissed. 28 U.S.C. § 1930(a)(6). Based on disbursements, Rebel has incurred liability for statutory fees of approximately $8,000 per quarter since confirmation of its plan of reorganization. However, Rebel did not submit a declaration or other evidence to substantiate its claim of actual prejudice nor the costs and attorney's fees that will be incurred by the estate if the motion is granted. [19] Rebel has not sought

---

15. Graves' motion, p. 6, l.21–24.

16. *Id.* at p. 6, l.26–27.

17. Rebel's Opposition, p. 4, l.10–p.5, l.2.

18. *Id.* at p. 4, l.22–27.

19. Nor does Rebel explain precisely why the bankruptcy case cannot be closed. Section 350(a) of the Code states that "[a]fter an *estate* is fully administered . . ., the court shall close the case." [emphasis added]. 11 U.S.C. § 350(a). However, as the Bankruptcy Appellate Panel observed in *Menk v. LaPaglia (In re Menk),* 241 B.R. 896 (9th Cir. BAP 1999):

The Bankruptcy Code contemplates that various activities may occur after closing. The fact that the estate has been fully administered merely means that all available property has been collected and all required payments made.

*Id.* at 911. Rule 3022, which implements § 350(a) in chapter 11 cases, provides that "After an *estate* is fully administered in a chapter 11 reorganization case, the court, on its own motion or on the motion of a party in interest, shall enter a final decree closing the case."

Fed. R. Bankr.P. 3022. "Factors that the court should consider in determining whether the estate has been fully administered include

entry of a final decree nor is there evidence that Rebel is preparing to do so. Because Rebel sustained no perceived prejudice directly attributable to the delay, the court weighs this *Pioneer* factor narrowly in favor of Graves.

### b. *Length of the Delay and Its Potential Impact on Judicial Proceedings*

■ Graves' motion was filed 15 days after expiration of the appeal deadline on May 9, 2005. The motion was timely under Rule 8002(c)(2). The delay was not significant, and Graves' action in seeking an extension does not, in and of itself, adversely affect judicial proceedings. However, it is "important for the court to determine whether granting an extension would unduly delay the administration of the bankruptcy case," given "the unique context of bankruptcy proceedings." *Nugent v. Betacom of Phoenix, Inc. (In re Betacom of Phoenix, Inc.)*, 250 B.R. 376, 381 n. 6 (9th Cir. BAP 2000).

The court takes judicial notice of the fact that Rebel filed its voluntary petition for reorganization on September 23, 2002, and confirmed its plan of reorganization on August 26, 2003. Thirty-four adversary proceedings were filed in this case after confirmation of Rebel's plan. All, but one, have been resolved. There are no other pending adversary proceedings nor are there any pending appeals. Indeed, there has been no activity in this bankruptcy for the past year, except the ongoing litigation by Graves against the debtor.[20] Rebel is ready to exit bankruptcy and "to function as any other business entity, under its own power in its usual ways of conducting business, without judicial restraint or interference, complying with all applicable laws and its agreements." *Barber v. Bettendorf Bank, N.A. (In re Pearson Indus., Inc.)*, 152 B.R. 546, 557 (Bankr.C.D.Ill.1993).

Graves acknowledges that "[s]ome decisions of the Court regarding the affairs of debtors in the Bankruptcy Court must become final very rapidly in order to avoid delays that operate to the detriment of all parties to such proceedings."[21] In the court's view, this is one of those decisions. Graves' attack on the Assumption Order is at the heart of the dispute between the parties. By virtue of the Assumption Order entered on November 5, 2003, Rebel assumed 43 executory contracts and unexpired leases and rejected another 25 executory contracts and unexpired leases in conjunction with confirmation of its Plan. Though properly served with Rebel's as-

---

whether the order confirming the plan has become final, whether deposits required by the plan have been distributed, whether property proposed by the plan to be transferred has been transferred, whether the debtor or its successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan, whether payments under the plan have commenced, and *whether all motions, contested matters, and adversary proceedings have been finally resolved.*" Advisory Committee Note (1991) (emphasis added). However, all of the factors in the Committee Note need not be present before the court will enter a final decree. *In re Mold Makers, Inc.*, 124 B.R. 766, 768 (Bankr.N.D.Ill.1990). *But see Greenfield Drive Storage Park v. Ca. Para-Professional Servs., Inc. (In re Greenfield Drive Storage Park)*, 207 B.R. 913, 918 (9th Cir. BAP 1997) (opining that the chapter 11 case could not be closed as a "fully administered case" because "unresolved matters concerning the estate remain[ed] to be decided"); *In re 1095 Commonwealth Avenue Corp.*, 213 B.R. 794, 795 (Bankr.D.Mass.1997) (holding that a bankruptcy case is not fully administered and quarterly fees continue to accrue under 28 U.S.C. § 1930(a)(6), until a pending appeal is resolved), *aff'd*, 236 B.R. 530 (D.Mass.1999).

20. Graves concedes that Rebel's bankruptcy case may have to remain open during the pendency of the appeal. Graves' reply, p. 4, l.4–5.

21. Graves' motion, p. 8, l.4–6.

sumption motion, Graves did not file an objection nor request a hearing. After being served with the proposed Assumption Order on November 3, 2003, Graves did not object to its entry nor file a notice of appeal.[22] Rather, Graves attacked the Assumption Order in state court and later characterized his complaint as an independent action under Rule 60(b). When summary judgment was entered against him and the appeal deadline passed, this motion ensued.

The Ninth Circuit recognizes that strict enforcement of the 10–day appeal period under Rule 8002(a) "is justified by the 'peculiar demands of a bankruptcy proceeding,' primarily the need for expedient administration of the [b]ankruptcy estate aided by certain finality of orders issued by the [c]ourt in the course of administration." *Galt v. Jericho–Britton (In re Nucorp Energy, Inc.)*, 812 F.2d 582, 584 (9th Cir.1987), *quoting Matter of Thomas*, 67 B.R. 61, 62 (Bankr.M.D.Fla.1986); *see Betacom*, 250 B.R. at 381 n. 6. The abbreviated time constraints for filing a notice of appeal in bankruptcy which are jurisdictional in nature serve to "[assure] prompt appellate review, often important to the administration of a case under the Code." Advisory Committee Note (1983). They also provide a definite point, in the absence of a notice of appeal, that litigation will come to an end. Given the policy favoring the finality of bankruptcy orders, acceleration of appeals, the context of the dispute between the parties, and the advanced stage of Rebel's reorganization, the court weighs this *Pioneer* factor heavily in favor of Rebel.

c. *Reason for the Delay, Including Whether It Was Within The Reasonable Control of the Movant*

It is undisputed that the sole reason for the delay was the admitted negligence of Graves' counsel, and that the delay was squarely within his control. Graves' counsel did not miss the appeal deadline due to ill health or disability, a delay in the mail, a miscommunication or failure to communicate with his client, a misguided instruction from a court clerk or judicial officer, or a "dramatic ambiguity" between relevant procedural rules. Nor was Graves' counsel the unwitting victim of an aberration in an otherwise fail-safe calendaring system. Graves' counsel, an attorney with 31 years experience who has litigated appeals in both state and federal court, failed to read and comprehend the plain, unambiguous language of Rule 8002(a).

Graves admits that his counsel "negligently overlooked" Rule 8002(a)'s 10–day deadline to file the notice of appeal, stating that the primary focus of his attention was elsewhere.[23] In his words,

---

22. Rule 8002(c)(1)(D) prohibits a bankruptcy judge from extending the 10–day deadline to file a notice of appeal if the order appealed from authorizes the assumption or assignment of an executory contract or unexpired lease under § 365, even if a motion for extension of time is filed within the 10–day time period. Fed. R. Bankr.P. 8002(c)(1)(D). As explained in the Advisory Committee Note accompanying the rule, "[t]hese types of orders are often relied upon immediately after they are entered and should not be reviewable on appeal after the expiration of the original appeal period." Advisory Committee Note (1997). Had Graves missed the appeal deadline for the Assumption Order, there would have been no remedy under Rule 8002(c)(2).

23. In his motion, Graves states:

" ... while plaintiff's counsel promptly began his review of applicable Bankruptcy Rules and precedent construing those Rules, *the primary focus of his attention had been on unique alternatives*—appeal to the Bankruptcy Appellate Panel or to the District Court—*presented by plaintiff's appeal, he negligently overlooked the crucial 10 day time limitation stated in F.R.Bk.P. Rule 8002(a)*."

"Plaintiff's counsel misread, misunderstood the hierarchy (over F.R.App.P. Rule), or unconsciously blocked out the 10 day limitation while focusing on other issues."[24]

Rule 8002(a) is the *only* relevant rule governing the deadline to file a notice of appeal in this adversary proceeding. Rule 8002(a)'s 10–day limitation is crystal clear and the lapse by Graves' counsel is egregious. Counsel has not presented a persuasive justification for his utter failure to read and carefully understand the clear and unambiguous mandate of Rule 8002(a). *Speiser*, 271 F.3d at 886; *Kyle*, 28 F.3d at 931–32.

The Ninth Circuit in *Pincay* stated that "a lawyer's mistake of law *reading* a rule of procedure is not a compelling excuse." *Pincay*, 389 F.3d at 860 (emphasis added). If, as the Supreme Court explained in *Pioneer*, the misinterpretation of unambiguous procedural rules usually goes against finding excusable neglect,[25] the failure of Graves' counsel to read and follow Rule 8002(a)'s clear and unambiguous language setting the deadline to file a notice of appeal is inexplicable. Therefore, the court weighs this *Pioneer* factor heavily in favor of Rebel.

### d. *Whether the Movant Acted in Good Faith*

There is no evidence that Graves acted with bad faith in filing his motion. Indeed, Rebel admits that it "does not attribute any bad faith or gamesmanship to the actions of Plaintiff or his counsel for the delay in making the Motion."[26]

## III. CONCLUSION

Absence of prejudice and the existence of good faith do not trump an attorney's ignorance or misunderstanding of unambiguous rules of procedure, particularly when the granting of an extension would unduly delay the administration of a bankruptcy case. While two factors tip narrowly in favor of Graves, the court balances the totality of the *Pioneer* factors in favor of Rebel and finds that Graves has not discharged his burden to establish that his failure to timely file a notice of appeal was the result of excusable neglect. Accordingly, Graves' motion for an extension of time to file a notice of appeal in this adversary proceeding pursuant to Rule 8002(c)(2) is denied.

The court will enter a separate order consistent with this opinion.

---

*Id.* at p. 3, l.27 to p. 4, l.3. Graves' counsel admits in a declaration filed in support of the motion that the notice of appeal "was not timely solely because of my ignorance and neglect." Declaration of John T. Blanchard, p. 10, l.11. He further admits that he "inadvertently misread the crucial provision of F.R.Bk.P. Rule 8002(a)" and that the "error should not have occurred." Declaration of John T. Blanchard, p. 10, l.23–26.

**24.** Graves' motion, p. 7, l.19–21. In his reply, Graves further admits:

"It is, of course, difficult to describe, after the fact, how a simple statement [Rule 8002(a)'s 10–day deadline] that now stands astride these proceedings as a colossus was overlooked. But it was." Graves' reply, p. 4, l.25–26.

**25.** *Pioneer*, 507 U.S. at 392, 113 S.Ct. 1489.

**26.** Rebel's Opposition, p. 6, l.7–8.